### In re JUDITH GAP COMMERCIAL CO.

(District Court, D. Montana. August 11, 1923.)

No. 2653.

1. Assignments for benefit of creditors ⊕379, 386—Assignee charged with what he received and credited with disbursements.

On settlement and accounting by trustees or other fiduciaries such as assignees for benefit of creditors, trustees will ordinarily be charged with all proved to have been received by them, and credited with all proved to have been properly disbursed by them.

2. Assignments for benefit of creditors ⊕396(2)—Burden on assignees on accounting to disclose details of trust by competent and sufficient evidence.

On accounting by assignees for benefit of creditors, the burden is on them to disclose all relating to the trust, its extent, transactions, and manner of performance, and to do so by competent and sufficient evidence.

3. **Bankruptcy** ⬅⟹305—Assignees charged with difference between what they received and what they accounted for by competent evidence.

On accounting between assignees for benefit of creditors and trustee in bankruptcy, where competent evidence was meager and all that competently appeared was that assignees received items aggregating $54,-483.86 and only turned over to trustee property aggregating $15,600.88, they will be charged with the difference.

4. **Bankruptcy** ⬅⟹304—When it is not shown that goods purchased by assignees were incorporated into estate, contrary will be found.

Where, on accounting between assignees for benefit of creditors and trustee in bankruptcy, evidence does not warrant finding that any goods sold the assignees were incorporated in the property of the estate, the finding will be that they were not.

5. **Bankruptcy** ⬅⟹317—Delinquency of assignees held to disentitle them to compensation.

Where assignees for benefit of creditors did not keep proper accounts and had failed to account for large part of property received by them, their delinquency *held* to disentitle them to any compensation for services on accounting with trustee in bankruptcy.

6. **Bankruptcy** ⬅⟹120—Assignee for benefit of creditors who had not fully accounted should not have been elected as trustee and will be removed.

Where credit men's association was, through its secretary as its representative, one of assignees for benefit of creditors from the beginning, and both assignees afterwards resigned in its favor, and all property received by the assignees had not been accounted for, its election as trustee in bankruptcy was improvident and will be set aside.

In Bankruptcy. In the matter of the Judith Gap Commercial Company, bankrupt. On accounting and settlement between assignees for benefit of creditors, and trustee. Ordered as stated .in opinion.

Sterling M. Wood, of Billings, Mont., for trustee, Billings Credit Men's Ass'n.

Dillavou & Moore, of Billings, Mont., for assignees Barncord and Stringham, and through them certain creditors.

BOURQUIN, District Judge. This proceeding is accounting and settlement by and between assignees for the benefit of creditors, appointed by the bankrupt prior to adjudication, and the trustee of the bankrupt's estate.

Chronologically, March 16, 1921, one Norman R. Barncord was a lawyer at Judith Gap, one H. C. Stringham was secretary of the Billings Credit Men's Association at Billings, the association was a corporation of wholesalers at the latter place to supervise credits and by assignment and otherwise to adjust affairs growing out of credits, and the bankrupt was a general mercantile establishment at the former place. At that time the company had many creditors, and the assignment that day made or, as the association puts it in its letter ostensibly signed by Stringham to creditors, "this joint trusteeship was arrived at, after much discussion of creditors represented by Mr. Barncord and those represented by the .Billings Credit Men's Association." The assignment did not provide for any bond by the assignees and was not recorded. Immediately the assignees took possession of all the company's property, and operated its business.

⬅⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In August, 1921, the association, for some Stringham's default, removed him from the secretaryship, and took from him a "relinquishment or surrender" of "all right, title, interest or estate" in or to the assigned estate and which assumed to "authorize and empower" it to act in his stead as assignee.

Shortly after, the assignees' manager in the company's store changed his weekly reports, theretofore made to Stringham, to the association, and on blank forms headed "Billings Credit Men's Association, Trustee, Billings, Montana. Weekly Statement," and continued them until after adjudication in bankruptcy of the company. Between Barncord and the association dissensions arose, and in January, 1922, Barncord tendered his resignation as assignee to the association, because "a joint trusteeship is unsatisfactory," but not to "relinquish any claims that I have for collection at this time against the Judith Gap Commercial."

In February, 1922, the association, advised its succession to Stringham was of doubtful validity, procured the company to direct a new assignment to the association, but later the company at Barncord's instigation refused to execute the new assignment and refused to longer recognize the old so far as the association was concerned. Some creditor attached, and the company, Barncord its attorney, filed petition herein and was adjudicated bankrupt on March 13, 1922. The association had information, and on the said date by letter requested that the clerk of the court "enter our names as interested. * * * We represent a large number of creditors." It was elected trustee of the bankrupt estate. Thereupon it petitioned the referee for an order that it pay in full claims of vendors of goods to the assignees. The referee refused, and one of said vendors, Dillavou & Moore its attorneys, sought review. The court confirmed the referee, and first advised of some of the anomalous circumstances, expressed doubt that the association's election as trustee should have been approved, noted that wide and unaccountable discrepancies appeared between assignees' inventory and bankrupt's schedules, that no settlement appeared between assignees and trustee, and suggested that settlement once for all should be had and wherein any vendor's' just claim might be worked out. Thereupon, the assignees, Dillavou & Moore their attorneys, petitioned the referee for a hearing to settle their accounts, to secure from the trustee sufficient to pay said vendors' and assignees' compensation, and for general relief. Hearing was had on due notice, but whereat the association trustee was not represented. The referee ordered that the said vendors would be paid, but only pro rata with other claims of their class, and that the assignees would be paid for their services $250 each. The assignees sought review. At this time more of irregularity appearing, the court disapproved the election of the association as trustee, and ordered that it show cause why its election should not be revoked and it removed from office. It appeared, and with no opposition it so far dispelled idea that it had aught to do with the assignment aforesaid, excused past delinquencies, and promised future diligence, that the order of disapproval aforesaid was vacated.

At the same time the settlement and accounting between assignees

and trustee was ordered to be reopened, resumed, and completed before the court. This coming on to be heard, the assignees and the said vendors appeared only by their attorneys, Dillavou & Moore, and the association trustee by attorney and agents. No objection was interposed to the vendors thus working out their claims through the assignees.

The evidence is highly unsatisfactory. It appears that the assignees, whomever they were, conducted the business of the company practically one year, by their admissions bought and sold merchandise to the extent of over $100,000, yet not a record, book, voucher, account have they presented in evidence. The entirety of the latter is composed of a written statement of Stringham's testimony before the referee in support of one said vendors' claims, his deposition for use before the referee in the settlement and accounting, a written statement of Barncord's testimony on the latter occasion, testimony mainly hearsay of one of the officers and an agent of the association trustee, various and fragmentary reports, invoices, and inventories also in the main hearsay, the bankrupt's schedules, and many letters of assignees, trustee, and creditors.

It would seem many and widely scattered creditors have no knowledge of the real situation, or trust to Barncord, Stringham, and the association representing many of them, or look to the court for just administration of the bankrupt estate without any creditors' assistance. No creditor has manifested any interest, save the said vendors who seek with the assignees' and trustee's aid to appropriate the greater part of present assets. The assignees Barncord and Stringham are indifferent if not worse, and the association trustee seems principally concerned to exculpate them as fully as possible.

[1, 2] The law of settlement and accounting by trustees and other fiduciaries is settled and clear; and briefly is that therein ordinarily they will be charged with all proven to have been received by them, and credited with all proven to have been properly disbursed by them. The burden is on them to disclose all relating to the trust, its extent, transaction, manner of performance, and that by competent and sufficient evidence. See Wootton Co. v. Ownbey (C. C. A.) 265 Fed. 91, and citations; 39 Cyc. 476–480, 498, and citations.

[3] In the matter of property received by the assignees, the only evidence deserving of that name is a statement issued by Stringham. It is dated March 10, 1921, and in an attached letter of March 28, 1921, signed by the association by Stringham, to creditors of the assignor, it is said to be according to the assignor's books of the date of the statement, "but as soon as new inventory is compiled at present prices, it will be forwarded to you." This statement is that assets are $73,454. Aside from realty, furniture, fixtures, and equipment, all of which were subsequently received by the trustee in bankruptcy, these assets are: Accounts and bills receivable, $25,309.91; cash $672.37; inventory (merchandise, on hand and purchased), $28,501.58. If any other inventory was taken, the only evidence is a few loose pages purporting to be an inventory of March 25, 1921, by the assignees' agent, which is said to be the same as the statement of March 10th, save the merchan-

dise is reduced 41 per cent., based on net cost in the store, and perhaps ignoring merchandise purchased. This inventory is unidentified, unsupported, and of no evidentiary value save in so far as in it may be found admissions against the assignees' interest.

The only other evidence of property received by the assignees is Stringham's oral testimony of merchandise "to about $11,000," and of accounts and bills receivable "to about $21,000," and Barncord's significant testimony that the amounts were "about $8,000 and about two or three thousand dollars," respectively.

Amongst what purports to be the "weekly reports" aforesaid, the earliest in date is of March 28, 1921, contains items of a preceding or "last report," and sets out "notes and accounts receivable" $24,276.14, inventory $12,328.63, net cost discounted 7 to 40 per cent.

It is Stringham's testimony that Barncord was to collect the accounts and bills, and to "watch the management of the store," and Barncord testifies that Pratt, who was store manager, was employed by the association.

Of these or like assets, whether or not of like value, in respect to which the evidence is silent, the association trustee in bankruptcy admits having received from the assignees and sheriff: Merchandise, $3,967.16; accounts, $5,599.45; bills receivable, $4,073.33; cash, $1,960.94. As before stated, the association trustee (which made no attempt at any time to secure an accounting from the assignees) manifests anxiety to excuse Stringham and Barncord as far as possible, and to that end attempts to state an account for them, to present in detail their operations. Accordingly, it presents its compilation of a "statement for the period of the trust" of the assignees. This is entirely hearsay, and of no evidentiary value save in so far as it includes admissions against the compiler's interest. From it the receipt of assets by the association trustee as aforesaid is derived.

There is no evidence of the disbursements by the assignees, of debts if any paid, of disposition of assets, that entitles them to credits beyond those by reason of assets received by the association trustee of the bankrupt's estate. All that competently appears is that of the property of the assignor bankrupt the assignees received items in amount $54,483.86, and the association trustee received $15,600.88. Giving the assignees credit for the amount received by the trustee from them and the sheriff (the latter, for the purposes hereof, presumed to have fully accounted), the assignees have failed to account for the difference, or $38,882.98, and it is very clear that they are to be charged to that extent and decreed to pay the same into the bankrupt estate.

[4, 5] They are not entitled to credits in behalf of the vendors of goods to them, nor are the latter entitled to any payment from the bankrupt estate. In fact, the evidence does not warrant a finding that any goods sold by the vendors to the assignees were incorporated in the property of the estate before or after bankruptcy, and so the finding is they were not. The vendors' remedy is against the assignees and any one responsible over for them. So, too, the assignees' delinquency disentitles them to any compensation for services or otherwise.

The order and decree is that on or before September 10, 1923, the assignees deliver and pay to the to be elected or appointed trustee of the bankrupt estate, the said assets or their equivalent in amount $38,-882.98, or show cause before this court on the first day of the term at Great Falls why they have not done so.

[6] Trustee to be elected is the order, for it is also very clear that the association trustee is disqualified to administer the estate in bankruptcy. The evidence tends to the conclusion that it was one of the assignees from the beginning, Stringham its representative, and that it assumed to act therein and is responsible in that capacity throughout, or at least from and after Stringham's "relinquishment or surrender" to it.

At this final hearing, it actually produces the weekly reports to it of the assignees' manager Pratt, and on its own blank forms. Both Stringham and Barncord declare it was one of the assignees, and both assumed to resign in its favor. In view of the new evidence tending to establish that it was or is responsible as assignee, the vacation of the order of disapproval of its election as trustee of this bankrupt estate was by mistake, improvident, and is now annulled.

The association's true character, liability, and responsibility are to be determined; and that can be done only through the medium of a new and disinterested trustee. The order is that the Billings Credit Men's Association is removed from the office of trustee of the bankrupt's estate, and that the referee proceed to a new election or appointment to that office. Therein the referee will be diligent to the end that the assignees, association, and counsel do not control the election. See Wilson v. Ass'n, 232 Fed. 824, 147 C. C. A. 18; In re Stowe, 235 Fed. 463; In re Kellar, 192 Fed. 830, 113 C. C. A. 154.

The removed trustee will account to the new trustee, subject to review and decision by referee and court in respect to whether or not the former is entitled to any allowances in the circumstances.