## In re LEHMAN.

## In re ANDERSON.

(District Court, D. Montana.   August 24,
1925.)

No. 4036.

**Bankruptcy ⊛132—Trustee may be removed
for failure to make report.**

Under General Orders in Bankruptcy, No.
17, on failure of a trustee to make a report
when required, he may, after an order to show
cause entered and served by the referee, be
removed by the court.

In Bankruptcy.   In the Matter of Swan
Anderson, bankrupt.   On citation by the
referee, of Fred Lehman, trustee, to show
cause why he should not be removed for fail-
ure to make report.   Order of removal.

BOURQUIN, District Judge.   Before the
judge, the referee cited the trustee to show
cause why he should not be removed from
office because he had failed to make to the
referee, as the latter ordered, report of the
estate's condition.

Appearing and waiving formalities, the
trustee advances only and orally that he has
used the trust funds for his own purposes;
and he questions if there is any legal au-
thority to presently remove him.

Briefly to answer, because of this aid and
hand of the court's embezzlement of the es-
tate in the custody and administration of the
court (the principal thing), no; but, because
of his failure to report (whether truly or
falsely is immaterial) the estate's condition
to the other aid or hand of the court (an in-
cidental thing), yes, removal by the court if
not by the judge.

It is admitted that this is another illustra-
tion of the fatal propensity to postpone sub-
stance to form that so often defeats justice,
and is an absurdity.   Nevertheless it is law—
in the Ninth Circuit—for the time being.

The relation between courts and trustees
was considered by this court in Matter of
the Billings Creditmen's Association (In re
Judith Gap Commercial Co., 291 F. 792;
Id. 1 F.[2d] 508), and the determination
was that trustees, being mere aids or hands
of the courts, are always subject to the lat-
ter's jurisdiction and plenary power of their
own motion to remove delinquent trustees.
The reasoning to that conclusion needs no
repetition here.

On review, the appellate tribunal held oth-
erwise and decided that the true rule or doc-
trine of the Bankruptcy Act (Comp. St. §§
9585–9656) is that in no circumstances,

whatever are the delinquencies of trustees,
can the courts of their own motion remove
them; that only if the trustees' wrongs be
discovered by some creditor able and willing
to assume the burden of litigation, and on
his complaint, have the courts jurisdiction
and power to remove unfaithful trustees.
See In re Judith Gap Commercial Co. (C. C.
A.) 298 F. 89; Id. (C. C. A.) 5 F.(2d) 307.

It is worthy of note that the first of the
appellate tribunal's opinions proceeds upon
the theory that a trustee is a public officer,
whereas he is an officer of only private em-
ployment and like to a bailiff, receiver, or
master; and the second of said opinions in
denial of the court's implied or inherent pow-
er to remove a delinquent trustee in order
to protect conceded trust funds in the court's
custody and administration counts somewhat
upon Bardes' Case, 178 U. S. 524, 20 S. Ct.
1000, 44 L. Ed. 1175, which turns wholly
upon the Bankruptcy Act's express mandate
in respect to contested property at no time
within the court's jurisdiction.

Of the doctrine itself, it is not too much
to say it is inherently evil and abhorrent, and
neither Congress nor courts, whichever be-
gat it, can give it legitimacy or respectabil-
ity.   In plain words, it denies to the courts
adequate power to perform duties imposed
by statute, impairs equitable jurisdiction by
the statute prescribed, subordinates courts to
their mere aids or hands, encourages the lat-
ters' infidelity, virtually degrades the courts
to fences for thieves, robs beneficiaries, and
defeats a principal object of the Bankruptcy
Act.

Worse than all else, the doctrine and its
consequences, of which the Billings Credit-
men's Association is a horrible example, de-
tract from essential if not vital public con-
fidence in the courts' ability if not willing-
ness to do justice—that sometime weakened
public confidence which, impaired by judi-
cial action or inaction, cannot be repaired by
any judicial dignity or gown.   The Billings
Creditmen's Association Case is by no means
unusual; and in any event the courts' ju-
risdiction and power should be as extensive
as their duty to administer trusts, sufficient
to cope with any chicanery of trustees, and
adequate to do justice as well in unusual cas-
es as in usual ones.

That the courts have other powers that
may more or less successfully detect infidelity
and possibly defeat it, is no argument in the
doctrine's behalf.   If entrenched in office, an
unfaithful trustee has more than the usual
advantages of the average criminal.   And
to a court which has been defeated in admin-

istration, and to beneficiaries robbed, there is little compensation or consolation in power of pursuit and some variety of prosecution that possibly may recover from or punish a delinquent trustee. However, the instant proceeding escapes the doctrine by justifiable resort to dictum in the opinion cited last aforesaid, which tentatively if narrowly recognizes the significance of General Order 17.

This latter provides that, if the trustee fails to make any report it is his duty to make, the referee shall order him to show cause before the judge why he should not be removed. It is submitted that General Order 17 is not an exception to the doctrine, but is a refutation of it in its entirety. In the first place, in it the Supreme Court does not in terms or at all purport to endow the courts with jurisdiction or power to remove trustees, but merely tacitly recognizes that they already have jurisdiction and power to that end, and prescribes procedure to set the courts in motion in particular circumstances. If the Supreme Court at any time assumes to confer jurisdiction and power, doubtless in matters so important it will speak in no uncertain language, will do so expressly and definitely, and leave naught to implication. Furthermore, to confer jurisdiction and power upon the courts is legislative, by the Constitution is vested in Congress alone, and by Congress is not and cannot be delegated to the Supreme Court. To the latter, the Bankruptcy Act gives power only to prescribe "rules, forms and orders as to procedure and for carrying this act into force and effect"; that is, to enable the courts to exercise the jurisdiction and power that are theirs by virtue of the act, expressly and impliedly, and are theirs inherently.

In the second place, General Order 17 is to bring to the courts' attention certain delinquencies that otherwise might escape their notice; and it does not import that, if delinquencies are known to the courts, or if referees are dispensed with as they may be, or if referees are ignorant of delinquencies or fail to act, the courts are powerless to themselves initiate proceedings in removal, and the trustees may escape removal. Nor therein is the Supreme Court creating in referees, the other aids or hands of the courts, greater power than have the courts, or predicating performance of the courts' duty on performance by referees, or elevating the red tape of form above the substance.

And in the third place, General Order 17, in sanctioning removal proceedings initiated by referees (a mere rule of procedure which courts in bankruptcy themselves might prescribe), affords conclusive evidence of the Supreme Court's construction that the act's specific authorization of removal on complaints of creditors is not a limitation upon the courts' jurisdiction and power to remove delinquent trustees, and is not exclusive, even as the act immediately thereafter declares it is not. And if it be conceded, as it is, that removal of trustees may be initiated by other than creditors in one case, that of General Order 17, it must be conceded also that the doctrine is without foundation and is invalid in all cases.

All this is too plain for argument. But to illustrate some absurdity otherwise, suppose that in the instant case the court dispensed with a referee, and in due time, by some accident, discovered the trustee's embezzlement. Certainly, any effective investigation, accounting, conservation, collection, and distribution of the estate, generally requires removal of the delinquent and appointment of another trustee. But, according to the doctrine, the court of its own motion cannot act to that end. Nevertheless its inescapable and paramount duty, as special guardian of the trust estate and to justly administer it, constrains that variety of action. Accordingly, it must move circuitously, belatedly refer the estate to a referee, advise him of the embezzlement, and—require him to forthwith initiate proceedings in removal? No; to request the trustee to report, in hope he will fail to report, and thus then and then only, the referee be authorized to initiate proceedings in removal and the court to act; or the court must seek out creditors, inform them, and solicit complaint by them. Neither the Bankruptcy Act nor the Supreme Court contemplates any such shabby "strategy."

The aforesaid interpretation of General Order 17 finds support in General Order 13, wherein the Supreme Court provides that courts in bankruptcy may veto creditors' appointments of trustees. The object is to insure proper aids or hands to assist the courts in administration of the estate. It, too, is not of jurisdiction or power created by the Supreme Court, but is only the latter's recognition that it is a power necessary to the courts to enable them to perform their statutory duty, without which they would become reduced to the status of quasi special tribunals of nonjudicial duty and power; and that not denied by the statute (even if it could be), this veto is implied or of the courts' inherent powers.

Without more, the conclusion is that stated

at the beginning, not for his embezzlement, but for his poor strategy in failure to report, this trustee is removed from office, and all compensation is withheld from him.